EDWIN J. MARSHALL, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 34331, 42228. Promulgated May 29, 1930.

*Thomas O. Marlar, Esq.,* for the petitioner.
*John W. Edwards, Esq.,* for the respondent.

### OPINION.

TRAMMELL: The petitioner here contends that prior to the first taxable year he had made a completed gift to his wife of certain corporate stocks, and that the dividends received therefrom in the taxable years were the property of and constituted income to his wife. The respondent determined that said stocks were the property of the petitioner, and that the dividends in question were taxable to him.

The petitioner testified that he gave these stocks to his wife for the reason that he was paying entirely more than his share of taxes, and further stated, voluntarily, that he gave them to her for the obvious purpose of spreading the tax.

If a valid gift of the stocks was in fact made, the reasons which moved the petitioner are immaterial, but such a situation invites scrutiny to determine whether a completed gift in good faith was effected, or whether it was a gift in form only for the purpose of reducing tax liability. In *P. B. Fouke*, 2 B. T. A. 219, we said:

> While there is no question that husband and wife may contract with each other—may buy from and sell to each other—in all such transactions the close relationship of husband and wife is, nevertheless, to be borne in mind, and such transactions are peculiarly subject to scrutiny when they involve the rights of third parties. This appl'es either to the rights of creditors or to the rights of taxing authorities. Husband and wife may not play fast and loose with their respective properties to the prejudice of creditors, nor may they do the same thing to the prejudice of taxes which they properly owe to the Government.

The sole issue here is whether the petitioner made a bona fide gift of the stocks in question to his wife prior to the taxable years. To constitute a gift in contemplation of law, there must be (1) an intention on the part of the donor to give—that is, to surrender complete control and dominion over the property to the donee; (2) there must be an acceptance of the gift by the donee; and (3) there must be a transfer of title accompanied by delivery of the property. *Charles Greenblatt*, 2 B. T. A. 77; *Estate of David R. Daly*, 3 B. T. A. 1042; *F. J. Vlchek*, 7 B. T. A. 1244; *J. T. Lupton*, 19 B. T. A. 166. In our opinion the record before us fails to establish any of these essential elements of a valid gift, which will be considered in the inverse order of their statement above.

With respect to the transfer of title and delivery of the stocks by the petitioner to his wife, the evidence is deficient and unsatisfactory in that it fails definitely to identify the stocks alleged to have been given or the dates on which given. Three witnesses testified by

deposition on this point, namely, the petitioner, his wife, and his confidential secretary, but none were able to state with reasonable certainty what stocks were given to the wife nor the dates of the gifts.

The petitioner's wife stated frankly that she could not remember the dates, and had only a very hazy knowledge of the stocks involved. Both the petitioner and his secretary testified in substance that the stock certificates were endorsed by the petitioner or a power of attorney executed and attached thereto, and that the certificates were thereafter turned over to Miss Reswick, who placed them in a safety box at the bank, kept in the wife's name; that the tax returns of the petitioner's wife were prepared by the said secretary, and that all of the stocks, the dividends from which were included as income in the wife's returns, must because of that fact have been so transferred to the wife at some prior date.

Each of these witnesses testified specifically that this was true of the stock of the Reserve Building Co. Such testimony states only a conclusion, and its unreliability is disclosed by the statement of the petitioner's counsel at the hearing that the stock of the Reserve Building Co., alleged to have been given along with the others to Mrs. Marshall, was at the time hypothecated with the Toledo Trust Co. to secure the payment of a note of the petitioner, and that the stock was sold by him in 1928 and the proceeds used by him to pay the note. It is now conceded by the petitioner that no transfer or delivery of said stock was made to his wife and that the respondent's determination, in so far as it involves the stock of this company, is correct.

Delivery of the stock certificates in question to the petitioner's secretary, Miss Reswick, can not in our opinion be considered under the facts as constituting delivery to the petitioner's wife. There is nothing in the evidence to warrant us in holding that Miss Reswick was the agent of the petitioner's wife, or had any authority to act for her. She was the agent of the petitioner, with specific authority to endorse checks and other documents in his name. The evidence does not show that any of the stock certificates were endorsed to the petitioner's wife, and we can only infer from the testimony that they were endorsed in blank. Nor were any of the certificates turned over or delivered to the petitioner's wife in person.

The evidence further discloses that the petitioner was a director of some of the corporations involved, and that after the alleged transfer and delivery of the stocks to his wife he continued as a director and as the owner of the stocks on the records of the several corporations. From all of the evidence we are unable to conclude that there was a bona fide transfer of the title or delivery of the

stocks to the petitioner's wife at any time during or prior to the taxable years. Clearly, there is not in any event a preponderance of the evidence to overcome the presumption of the correctness of the respondent's determination that the petitioner did not make bona fide gifts to his wife of the stocks involved.

As to the second element of a gift—acceptance by the donee— the record seems to justify the conclusion that here there was no acceptance, either express or implied, on the part of the petitioner's wife. There was no gift to accept. She was not called upon to accept or decline; she had no voice in the matter. She was merely informed by her husband in a general way of what he was doing. She did not know what stocks were supposed to have been given to her, nor was she permitted by the petitioner to exercise any right of control or dominion over the stocks or the dividends therefrom. On this point the wife testified:

Q. Do you recall any of the stock which Mr. Marshall mentioned to you that he had turned over?

A. Let's see. The Richardson securities, I remember that. And Champion, and I remember the Larrowe—I can't remember them.

\* \* \* \* \* \* \*

Q. As far as you know you received all these dividend checks, is that true, through Miss Reswick?

A. Yes. I took two or three of them when I was not supposed to. They came here. When I say I was not supposed to, the check came from the Richardson and I supposed it just was mailed to me and I just cashed it and used it probably for antiques or something like that. \* \* \* I think I did that with two of those because Mr. Marshall asked me if I received them and I said I did; I supposed somebody at the office gave them to me and I used them and he said not to use them any more. \* \* \*

Q. He said not to use them any more?

A. He told me not to do that; I should return them to Miss Reswick.

We do not attach any weight to the fact that the stock certificates were placed in a safety box kept in the name of the petitioner's wife, as through his secretary, Miss Reswick, the petitioner exercised control over it and its contents. Clearly the stock certificates were not delivered to the petitioner's wife personally and the evidence does not show a delivery to any one authorized by her to act in her behalf.

In respect to the other element of a gift above set out, the petitioner testified categorically that it was his *intention* to give these stocks to his wife, but his intention was a mental condition which can be determined by us only from his actions, and, upon consideration of all the evidence before us, we can not conclude that he had the intention to give. For all practical purposes the petitioner retained as complete and exclusive control and dominion over the stocks after as he did before he had endorsed and placed them in the safety box in the name of his wife. There is no evidence of the

petitioner having received any authority from his wife with respect to handling such securities. He retained to himself such right and control. The whole transaction was conceived for the sole purpose of reducing the individual tax liability of the petitioner, and was not intended to effect a bona fide gift to his wife. The petitioner testified as follows:

> I gave to Mrs. Marshall all of the stocks, I don't think I own anything of this nature. The reason I gave them to her is perfectly obvious. All of my income comes here in the shape of cash * * * and I was paying entirely more than my share of taxes. It was allowable to make this gift to Mrs. Marshall for the purpose of spreading the tax—avoiding the tax, if you please, and I gave it to her for that purpose. * * * As I said before, I know what is required to make a completed gift and this was a completed gift and I filed honest tax returns.

We repeat that the reasons which actuated the petitioner are important only in determining whether or not he in fact made a valid gift of the stocks to his wife, and, for the reasons above set forth, it is our opinion that a bona fide gift was neither made nor intended to be made. The determination of the respondent is approved.

*Judgment will be entered for the respondent.*